Good morning, and may it please the Court, Matthew Brown for the Appellant, Mr. CARTY. This case involved serious constitutional violations that resulted in the deprivation of Mr. CARTY's liberty, above and beyond the 16-year term of imprisonment that he received as punishment for his crimes. Before the State could institutionalize Mr. CARTY, it needed to prove a critical fact required by the statute, namely substantial sexual conduct. Instead of proceeding in the way that prosecutors and public defenders and civil trial lawyers proceed every day across the State and across the country, namely calling witnesses to put on live testimony to establish facts and subject them to cross-examination, the State here elected to proffer only documents... Was he represented by counsel? He was represented... And did counsel object to that? Counsel did, yes. And under the statute, he was provided, counsel, pursuant to the terms of the Act? That's correct. And counsel requested the opportunity to call the victim witnesses? Counsel was given the opportunity to call witnesses on behalf of Mr. CARTY. The State, however, elected not to call witnesses on its own, and as this Court has made clear, as well as the Supreme Court, it's not enough simply to give the defendant or the committee in this instance the ability to call witnesses. You can't shift the burden like that. There's no substitute for the State calling witnesses on its own. For instance, there's the Hernandez-Guadarrama case where it was an alien seeking deportation, and the Court held that it had to be a right of confrontation and cross-examination, and it wasn't enough just to say that the alien could call witnesses on its own. And here we have a citizen facing civil commitment, not just an alien facing deportation. Now, the State has said that it would be too inconvenient or too burdensome to require it to put on live testimony, but the Supreme Court has never ---- Well, you've gone back how many years now? 16 years? The civil commitment hearing was in 99, but the conviction was all the way back in 91. Well, he wants to bring on the cross-examine the victims. And he could have done that at the time of the trial, but he pled guilty. Well, that's a point that some courts have made, but here you have a situation where it was a People v. West plea, and there was absolutely no admission to underlying facts in connection with the People v. West plea. And this is an important point because the California Supreme Court in People v. Otto put a significant amount of reliance on the notion that the probation report, which is really the foundation here for the factual finding, could be subject to challenge at the criminal case much earlier. And in that case, even though Chief Justice George and Justice Kennard concurred in the judgment, they dissented on that point. And they explained that a lot of times in criminal cases there absolutely is no incentive to challenge the probation report at the time of a guilty plea because in the very nature of the guilty plea they've reached an agreement with the government on what the punishment is going to be. That's exactly what happened in this case. There were seven counts. Under the statute, the choices that the judge had would be three years, six years, or eight years. The government agreed as part of the plea to a 20-year lid, as they call it, so 20 years maximum. So if you look at the seven counts, even if the trial court were to pick the lowest of the three options, that's 21 years. It's already above the amount that the government has agreed to. So Mr. Carty knew, and his counsel knew, that there was really no incentive to challenge the facts in the report because they were already going to get a sentence that was at the lowest end. Isn't that the nature of the bargain, though? The nature of a plea bargain is to give up the calling of witnesses and cross-examination. Well, that's quite right, and I think it's appropriate for a criminal defendant to make that choice at the time. But I don't think that it's at all fair to put the criminal defendant in the position of having to predict later on that it is going to sort of waive due process rights in an SVPA hearing. Is Hernandez a civil or a criminal case, the one you cited? Hernandez, I believe, is a deportation case. So that was an alien-facing deportation. Basically, this is a due process in the civil context, and you're saying it's not enough for the defendant to have the opportunity to call witnesses. The statute does provide for subpoena power, doesn't it? I believe it does. He could have called. So you're saying the government has the normal criminal prosecutorial burden that it would have in a criminal case to provide and call the witnesses itself. It can't rely on the hearsay. Well, I don't think that you have to go quite that far. I mean, I know that the Court may just be suggesting an analogy. I mean, I'm not suggesting that you have to import criminal concepts into this setting. Really, you just need to look at the Supreme Court's due process jurisprudence to see that really in a context like the SVPA hearing under Galt and Vitek, for instance. Vitek just says there has to be the opportunity. It doesn't say who has to call them. Well, my reading of Vitek is that the court below had set out procedures that included confrontation and cross-examination, and the court approved of those procedures and said in fact so. Yeah, but also didn't it excuse some calling some if it was impracticable? I think it was in the court's terms to avoid disruption. Yeah, so it didn't say that there was a blanket, you know, all or nothing. That's true, and we're not taking the position here that in every SVPA case there needs to be that sort of blanket presumption. When he entered his plea, certainly was he aware of what would occur after he served his time? No, absolutely not. He knew nothing about the SVP process? No, SVPA was enacted in 1995, which is four years after the conviction, which is that in conjunction with the fact that this was a People v. West plea really gives this case, I think, an even heightened sense of unfairness. Well, you know, you make that argument that you have no incentive to challenge the probation report which set out all this information, but, you know, counsel knows that those reports follow the defendant when the defendant is in prison and that what's in those reports can affect the conditions of confinement and all the rest of it. I mean, I've never had an experience where counsel had no incentive to challenge statements in a probation report that were rather damning. Well, you know, those are really two different sorts of proceedings. I don't think that you can put a presumption on a criminal defendant who's pleading under People v. West and receiving a favorable sentence at the low, even below, frankly, the low end of the spectrum and say that he also has to preserve and make, not just preserve, but actually affirmatively make challenges to a probation report for the purpose of sentencing that would then also hold up however many years later when the government is trying to show substantial sexual conduct. They're two different factual findings and two different sorts of proceedings for different purposes. Well, there is in civil proceedings the concept of opportunity to litigate and that you're just collateral esophile and the like. So it's not unusual, I realize. I take your point, but because we're not in the criminal context, it may be an awkward distinction in reality, but nonetheless, that's where we are. Well, I see that my time is quickly running out, but I might just make one more point on this sort of criminal-civil distinction, and that is we're not taking the position that Crawford ought to apply in this context, but if you look at the liberty interests that are at stake, virtually indistinguishable between a criminal proceeding and this sort of civil commitment proceeding. And if you look at the government's interests, if anything, the government interests are stronger in a criminal context given the policies of retribution and deterrence and protection of the public. And yet in that context, it's, of course, clear now that the government has to allow a defendant to confront and cross-examine witnesses, and it ought to be the same in the due process context in the civil commitment. One last question, counsel. This is here on habeas, and the standard for that is fairly exacting under ADEPA. And you have the burden of showing that the state court's ruling was contrary to clearly established Supreme Court precedent. What Supreme Court precedent that's clearly established? Can you give me case names? Yeah, that's Gault and Vitek. In re Gault? In re Gault and Vitek. Versus Jones? Versus Jones and Goldberg v. Kelly. And then on the Equal Protection Clause, which we haven't discussed, and my understanding is the state has waived its arguments on that because it didn't make them in the briefing, Baxter v. Harreld and Humphrey v. Cady. Okay. Thank you. Thank you. Good morning. May it please the Court, Bradley Weiner of Deputy Attorney General for the State of California for responding in this case. The discussion just engaged in, I believe, is academic because there is a more core fundamental issue before the Court, as we've alluded to in our briefing, and that is the Article III jurisdiction issue. I'd like to take a few minutes to discuss that issue before I turn to the substantive habeas claim regarding the introduction of hearsay if I may. In discussing Article III jurisdiction,  and we have an issue of collateral consequence. This Court has dealt with the California Sexually Violent Predator Act recently in two cases, of course the Hubbard case and the Jackson case, which, of course, you, Judge Pragerson, are familiar with, having served on that panel. Oh, yeah. I mean, I get every one of those cases clearly in mind, and I'm very happy that you're one of my readers. Well, thank you. Of course, the Hubbard case dealt with the expiration of a commitment term prior to filing the habeas petition, and the Jackson case dealt with the expiration of the term after the petition was filed. What's important in just referencing those two cases is in the Hubbard court held that the case was not moot because the issues could evade review, and there was a pending civil commitment proceeding that was in the pipe, so to speak, in the state courts. And, of course, it involved a constitutional claim seeking to invalidate the entire act. In the Jackson case, this court held, importantly, that there was no collateral consequence because, A, the court cannot offer a remedy or relief for an expired term. That's on page 1073. That the defendant or the appellant has the burden of producing evidence to establish an injury or disability that can satisfy the collateral case and consequence requirement. And the court specifically looked at the fact that there may be a future civil commitment and the fact that there may be potential reputational harm were not satisfactory to provide Article III collateral consequence jurisdiction. And when you think about it, that's actually consistent with the Article III case law of the U.S. Supreme Court. I referenced in our supplemental authority the California Supreme Court case last year of In re Alva that discussed extensively the U.S. Supreme Court law, particularly the Smith v. Doe case, and whether or not sex offender registration is punishment for purposes of the Eighth Amendment, but also whether or not it is punitive in nature or regulatory. What happens if he fails to register or do his 90-day verification? He is subject to potential criminal prosecution, just like any sex offender registrant, which he is, regardless of the civil commitment finding, because he has to register on an annual basis. Then why isn't that a collateral consequence? Well, for two reasons. One, you would have to find that the mere act of sex offender registration, which we have independent of the civil commitment, to be a disability or injury sufficient for purposes of collateral consequence. And I have not heard any controlling U.S. Supreme Court law from counsel that suggests that to be the case. Second... Wait a minute, mootness isn't a question of... This is not AEDPA standard when we're talking mootness. I understand that, but what is the case authority to support the notion that sex offender registration is a collateral consequence? Just common sense, that's all. Well, when you think about it, we deal with the disability such as inability to serve as a juror. We deal with inability to vote. Those disabilities... So having to register every 90 days with the threat of going to jail is a significant consequence? Would you like to have to do that every three months? Well, I certainly wouldn't. I wouldn't like to do it on an annual basis either. Put that on the Internet now, don't they? So you could get on the Internet and find out who the registered sex offenders are that live in your neighborhood. And there's nothing unconstitutional about that whatsoever? Well, no. No, but it's a disability. I mean... Well, we know that probation and we know that supervised release such as parole are not sufficient consequence. And think about it in those terms. In those terms, you're dealing with people who don't have the freedom to work and go as they please. Not sufficient consequence for what? For purposes of establishing serious disabilities. Well, they certainly have been held sufficient to eliminate their mootness as an issue. But we're not just talking about mootness without also talking about... Also in terms of the ability to provide effective relief. Well, if he's not a... was improperly characterized as a sexually violent predator, wouldn't that eliminate his obligation to have to sign in every 90 days? Well, the problem is, of course, we also have a separate subsequent commitment. Now, counsel suggests to this Court that this Court somehow has jurisdiction over that subsequent commitment and that if we invalidate the initial commitment and somehow all other commitments, which, of course, are separate civil commitment findings, somehow are a house of cards that fall. I don't know under what authority that is. Analogously, think about... Let's say someone is convicted of theft. And while that theft conviction is winding its way through the state direct appeal and the federal habeas corpus proceedings, the defendant gets picked up and commits another crime. That's another theft. And now they're charged with petty theft with a prior. Let's assume for the sake of argument that that initial theft conviction is ultimately invalidated by this Court. Does this Court then have the ability to go out to the other subsequent conviction and invalidate that conviction? Of course not. In order to get that subsequent conviction validated, the defendant has to go and seek habeas relief. He has to exhaust those particular remedies before the state courts. Well, let's assume we disagree with you since you're running out of time. What's your defense of the underlying issue? Yes, thank you. Is the state still using these people v. West, please? In some context, they are. I think that some of the problem resulted also, we know, from the three strikes arena when defendants are charged with prior convictions and there was facts underlying the prior conviction to establish whether or not it was a sufficient prior conviction for strike purposes. There were issues that were foaming in the state courts as to whether or not we had sufficient facts. For example, residential burglary might not have been proven. But in this particular case, we don't have to deal with any of those sorts of problems because two reasons. One, the question is whether or not the statements are reliable and trustworthy. That's consistent with federal rules of evidence, the catch-all provision. We have statements here that were introduced both in the probation report to police officers as well as statements that were introduced in the Navy medical reports, which is consistent with the reliability clause of the federal rules of evidence for medical reporting. We also have the issue of whether or not counsel alluded to the question of whether or not Crawford applied. And even though Crawford is not an issue that is briefed before the court, I suggest very quickly, there's no Sixth Amendment confrontation issue here. Therefore, Crawford has no application in this particular instance. There is no United States Supreme Court authority. Therefore, Andrade says that the court could not have unreasonably applied U.S. Supreme Court law. If we look at what the district court did, which was consistent with what the trial court did, it found that the defendant had the opportunity to challenge the witnesses before him. He waived that right. He chose not to present these witnesses and bring them and to challenge their testimony. At the hearing. At the hearing, at the civil commitment hearing. The trial court also excluded police reports because it found that those were not trustworthy enough and reliable enough to be admitted. The introduction of hearsay statements in a civil commitment proceeding, so long as the defendant has an opportunity to be heard and an opportunity to present witnesses on his own behalf, supports the notions of due process and procedural due process safeguards. Is there any evidence in the record as to his ability to find these victims so long after the event? I know that there were some references in the record to having the police officer, the probation officer and the physicians testify. Remember, the defendant even waived the right. Hearsay, though. In terms of getting the original victims. I don't think there's any. Any evidence that that was a viable option? I do not believe there was any evidence in the record that that was a viable or not a viable option, because the record is not clear. But what we do know is that the court specifically asked the defendant and defendant's counsel whether he wished to bring the victims in for testimony. And he said no. He didn't say I can't find them. And the salient point, of course, is that the hearsay exception set forth in the civil commitment scheme comports with procedural due process. And as a result, there's no due process violation. And the district court did not correctly found that the state court of appeal did not unreasonably apply United States Supreme Court law. And therefore, under ADEPA, the habeas claim must be dismissed. And finally, should the court wish to consider Crawford, the corollary issue that we've raised in our brief relates to the Teague issue. I know that this court has the Botkins case, which is now pending en banc review. And I suggest that if the U.S. Supreme Court in Summerlin can say that Apprendi, which completely changed the landscape of whether or not a trial right is allowed, is not a retroactive watershed rule of law, then this certainly could not be, then Crawford certainly could not be either. Unless the court has any further questions, respond at least to that. Thank you. Thank you. We'll give you a minute for rebuttal. Well, just one maybe on this mootness point. It's clear that if the court finds that the 1999 substantial sexual conduct finding were invalid or were to be nullified, the 2001 order has to be, because it was based on the prior 1999 finding of substantial sexual conduct. It's clear that it was given collateral estoppel effect in the 2001 order. The only new finding that was actually re-litigated and re-decided in 2001 were the second two prongs. Did he have a mental disorder and did he continue to be a threat to the community? So under the equitable powers of the state court, certainly Cardi could go back and get the 2001 order nullified as well, because there's no longer a valid final judgment with the necessary component of substantial sexual conduct that's in existence, and so therefore the 2001 order would have to fall as well. Thank you. Thank you. I would call. Thank you both. Thank you. Thank you.
judges: Pregerson, Fisher, Bybee